IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| City of Moundridge, Kansas, *et al.*, | |
| Plaintiffs, | |
| v. | Case No. 1:04CV00940<br>Judge Richard W. Roberts |
| Exxon Mobil Corporation, *et al.*, | |
| Defendants. | |

## ORDER

AND NOW, this ____ day of _____, 2007, it is hereby ORDERED that Defendants' motion for reconsideration of the Court's order denying Defendants' motion to dismiss Plaintiffs' Sherman Act § 1 claim, filed on June 14, 2007, is DENIED.

 

 

_____
Richard W. Roberts
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| City of Moundridge, Kansas, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> Exxon Mobil Corporation, *et al.*, <br><br> Defendants. | Case No. 1:04CV00940 <br> Judge Richard W. Roberts |

**PLAINTIFFS' MEMORANDUM AND POINTS OF AUTHORITY
IN OPPOSITION TO DEFENDANTS' MOTION FOR RECONSIDERATION,
REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION
FOR LEAVE TO AMEND SECOND SUPPLEMENTAL COMPLAINT,
AND MOTION TO STRIKE**

Stretching the Federal and Local Rules of Civil Procedure, defendants have filed a single pleading (collectively, "Defendants' Motion"), in which they have combined (1) a motion to reconsider the Court's order of January 9, 2007 (Dkt. No. 75) ("January 9th Order") granting in part and denying in part defendants' motions to dismiss, and (2) an opposition to plaintiffs' motion pursuant to the Court's Scheduling Order issued February 23, 2007 (Dkt. No. 84) ("Scheduling Order") to add new parties to the litigation by May 24, 2007. Defendants are also defying the procedural rules by introducing preliminary evidence in support of their motion for reconsideration, because it is well established that courts are not to consider any evidence extrinsic to the pleadings in ruling on a motion to dismiss. What is more, this preliminary evidence was obtained by defendants through discovery, which the Court ordered to commence on February 23, 2007 as to all parties,

yet defendants have not themselves produced any of the evidence that the plaintiffs requested over two months ago.

Defendants do not explicitly state under which Federal Rule of Civil Procedure they are filing their motion for reconsideration. According to Rule 59(e), which requires that motions to reconsider be filed within 10 days of the order in question, which was dated January 9, 2007, defendants' motion is clearly untimely. Defendants do contend that "[t]he Court has authority under Rule 54(b) to reconsider its early ruling." Defs. Motion at 2, n.1. The case of *Bell Atlantic Corp. v. Twombly*, 550 U.S. ___, 127 S. Ct. 1955 (2007) ("*Twombly*") , cited by the defendants, was issued on May 21, 2007, almost a full month before Defendants' Motion was filed. Defendants' motion to reconsider indicates that this case is clearly beyond the motion-to-dismiss stage, given that the motion relies on piecemeal, incomplete information obtained from discovery. In the interests of efficient case management, fairness and justice, the motion to dismiss should not be revisited at this juncture.

For both their motion and their opposition, defendants rely almost entirely on the Supreme Court's decision in *Twombly*. As plaintiffs will explain, that reliance is entirely misplaced, and once *Twombly* is removed from consideration, the grounds for defendants' motion to reconsider and their objections to the proposed amendment lose their force.

**ARGUMENT**

I. **BOTH PLAINTIFFS' SECOND SUPPLEMENTAL COMPLAINT AND PROPOSED AMENDMENT THERETO SATISFY THE PLEADING REQUIREMENTS OF *TWOMBLY*.**

Plaintiffs' Motion for Leave to Amend Second Supplemental Complaint, filed May 24, 2007 (Dkt. No. 85), merely adds five new cities in Kansas as plaintiffs and substitutes Shell Oil Company as defendant for its subsidiary, Coral Energy Resources, L.P., which claimed that it had no authority over or involvement in Shell's wellhead sales

2

of natural gas. Defendants' faulty reasoning in opposing the amendment is as follows: because plaintiffs' Second Supplemental Complaint "fails to allege the necessary facts suggesting an agreement," as required by *Twombly*, and the proposed amended thereto does nothing to cure this purported defect, the proposed amendment is "futile" and should not be permitted under Fed.R.Civ.P. 15.  Defs. Motion at 1-2.

Defendants, however, avoid any reference to the passages in the Second Supplemental Complaint in which the existence of an agreement is clearly alleged, even though those passages have not been changed and were thoroughly considered by the Court in its January 9th order denying defendants' motions to dismiss plaintiffs' Sherman Act § 1 claim. Indeed, though defendants think the opposite, the Second Supplemental Complaint is considerably stronger than the one in *Twombly*, which the Supreme Court faulted for doing nothing more than alleging parallel conduct on the part of the defendants there.  *Twombly*, 127 S. Ct. at 1970-71.

### A.  The Second Supplemental Complaint Satisfies the *Twombly* Pleading Standard.

In the instant case, the Second Supplemental Complaint and the proposed amendment thereto both satisfy the pleading standard articulated by the Supreme Court:

> …[W]e hold that stating a claim requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made.  Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement.  And, of course, a well pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.

*Twombly*, 127 S. Ct. at 1965 (internal quotations and citations omitted).

As a very recent decision by the United States District Court for the District of Columbia confirms, *Twombly* does not alter prior law requiring the trial court to "accept as true all factual allegations in the complaint, and to give the plaintiff the benefit of all inferences that can be drawn from the facts alleged." *Benz v. Washington Newspaper*

3

*Publ. Co.*, No. 05-1760, 2007 U.S. Dist. LEXIS 44087, at *5 (D.D.C. June 19, 2007) (citing *Twombly* at 1965 and *Atchinson v. Dist. of Columbia*, 73 F.3d 418, 422 (D.C. Cir. 1996)).

The allegations in the Second Supplemental Complaint set forth what defendants themselves say must be shown to satisfy *Twombly*—namely, "factual allegations demonstrating an actual agreement amongst the Defendants to fix prices (whether reached during the NPC meetings or sometime thereafter)… ." Defs. Motion at 9, n.5. Thus, plaintiffs alleged in paragraph 17 of the Second Supplemental Complaint (paragraph 15 of the proposed amendment thereto),[1] in a passage not quoted in Defendants' Motion, the following:

> 17. The actual sales of natural gas by the Defendants in interstate commerce since mid-2000 have exceeded the $2.74 per MMBtu price projected through 2010 in the original December 1999 Report—and now, exceed the new prices Defendants jointly *agreed to* in the September 2003 Report.

(Emphasis added.) Plaintiffs are at a loss to explain how a complaint could allege an agreement any more explicitly than the above-quoted passage. Defendants stubbornly refuse to accept the fact that the 1999 and 2003 Reports memorialize an agreement by the defendants to set the price of natural gas over the next several years, even in the face of the knowledge that defendants' representatives sat together on some of the same working committees and subgroups that produced these Reports.[2] What is more, none of the defendants submitted a written minority report or other dissent to accompany either of these Reports.

Nor does *Twombly* require, as defendants contend, that plaintiffs specifically allege that defendants entered "an agreement outside of the meetings regarding the

---

[1] All of the paragraphs of the Second Supplemental Complaint cited herein are restated in the proposed amendment thereto.

[2] *See*, *e.g.*, 2003 NPC Report, Appdx. B, at B-7, B-8, B-15, B-16. The 2003 Report is Exhibit B to defendant ConocoPhillips Company's Motion to Dismiss Plaintiffs' Complaint (Dkt. No. 15, Aug. 13, 2004).

4

preparation of the NPC Reports (*i.e.*, side meetings and agreements)." Defs. Motion at 9, n.5. In truth, all that *Twombly* requires to state a Sherman Act 1 claim is

> a complaint with enough factual matter (taken as true) to suggest that an agreement was made. Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement.

127 S. Ct. at 1965. Nor does *Twombly* overrule the vast number of cases that have held that a conspiracy can be proved circumstantially: the chances are extremely remote that the existence of an illegal agreement to fix prices can be established based solely on publicly available documents—precisely what defendants here expect plaintiffs to do without the benefit of any discovery whatsoever. *Twombly* demands no such thing in a complaint.

The Supreme Court noted "several examples of parallel conduct allegations that would state a § 1 claim" under the plausible-grounds-to-infer agreement standard. *Id.* at 1966, n.4. One of them that the court said would support a plausible inference of conspiracy was "complex and historically unprecedented changes in pricing structure made at the very same time by multiple competitors, and made for no other discernible reason… ." *Id*. In the instant case, the 1999 NPC Report referred to by plaintiffs in their complaint cited data provided by the U.S. Department of Energy's Energy Information Administration showing that actual U.S. wellhead natural gas prices had averaged $1.97 from 1992-1998. The prices in the 2003 Report are in stark contrast. The plaintiffs in their complaint did not present the price agreement memorialized by the 2003 NPC Report in a vacuum, but rather placed it in the context of factual allegations demonstrating that shortly after publication of the Report, natural gas prices rose to the $5.00 to $6.00 per MMBtu range as contemplated by the 2003 Report, and did not thereafter dip below $5.00 but instead exceeded even the higher prices stated in that Report. *See*, *e.g.*, 2d Suppl. Compl. ¶ 18-21, 26. *See United States v. Socony Vacuum Oil*

*Co.*, 310 U.S. 150, 177-178, 220, 223, 245 (1940) (combination to create price floor under market held unlawful under Sherman Act § 1).

Plaintiffs also allege that historically unprecedented changes in pricing structure, in the form of steeply rising prices to unprecedented levels in the months immediately following Hurricanes Katrina and Rita in 2005, were made by defendants in lockstep for no good reason. 2d Suppl. Compl. ¶ 21. Plaintiffs have alleged in great factual detail in the Second Supplemental Complaint, and the proposed amendment thereto, that these price rises occurred even though the U.S. Department of the Interior reported that the hurricanes affected only .5 Tcf of natural gas deliveries—far lower than the large increases in proved reserves of natural gas, working gas in storage, and technically recoverable gas resources, which were at historically high levels, and while demand on the average has not increased since 1999. 2d Suppl. Compl. at ¶ 21, 28.

It has been held that competitors' joint withholding of supply from the market in order to create scarcity (or, alternatively, pretending that a scarcity exists when none does) is a violation of Sherman Act § 1. *See, e.g.*, *American Tobacco Co. v. United States*, 328 U.S. 781 (1946) (withholding product); *Dimidowich v. Bell & Howell*, 803 F.2d 1473, 1479-80 (9th Cir. 1986) ("A jury reasonably could conclude that [defendant's] stated reason for refusing to sell to [plaintiff] was a mere pretext. Thus [plaintiff] has presented evidence that tends to support an inference of concerted action…and tends to exclude the possibility of independent action"); *Fragale & Sons Beverage Co. v. Dill*, 760 F.2d 469, 474 (3d Cir. 1985) (evidence of pretext, if believed by a jury, would disprove likelihood of independent action). The defendants' agreement to the prices set forth in the 2003 Report, and their public announcements of natural gas scarcity post-Katrina and Rita when none existed, give the lie to any contention that "'defendants' allegedly conspiratorial actions could equally have been prompted by lawful, independent goals which do not constitute a conspiracy.'" *Twombly*, 127 S. Ct. at 1971 (quoting *Kramer v. Pollock-Krassner Foundation*, 890 F. Supp. 250, 256 (S.D.N.Y. 1995)).

> B.  **This Court Based Its Denial of Defendants' Motion to Dismiss Plaintiffs' Sherman Act § 1 Allegations on Factual Allegations That Met the *Twombly* Standard.**

In ruling on the defendants' motions to dismiss, this Court pointed to factual allegations in the plaintiffs' Second Supplemental Complaint regarding their Sherman Act § 1 claim that satisfy the *Twombly* plausibility test:

> Here, plaintiffs allege that the defendants conspired to fix prices through their participation in drafting the NPC reports in which they projected future price projections and suggested that the higher price of natural gas was due to fluctuations in supply and demand….Plaintiffs argue that despite defendants' claim of a natural gas shortage in the 2003 report, there is "no evidence that the existing total resource base of natural gas in Canada and the United States has shrunk from that shown in the December 1999 Report." …Instead, defendants' projection constituted an attempt [according to plaintiffs] to "ensure unnecessarily high prices for natural gas"…and "actual gas prices in the United States have never fallen below those agreed-upon prices."…*Based on this circumstantial evidence, plaintiffs have alleged an agreement that may constitute a violation of Section 1 of the Sherman Act particularly at this stage of the litigation.*

*City of Moundridge v. Exxon Mobil Corp.*, 471 F. Supp. 2d 20, 40-41 (D.D.C. 2007) ("*Moundridge"*) (emphasis added). Certainly, nothing in *Twombly* indicates that an agreement or conspiracy to fix prices in violation of Sherman Act § 1 cannot be based on circumstantial evidence. Thus, the Supreme Court cites *Theatre Enterprises, Inc. v. Paramount Film Distributing Corp.*, 346 U.S. 537, 540-41 (1954) for the proposition that, while factual allegations of parallel "business behavior [are] admissible circumstantial evidence from which" agreement may be inferred," 127 S. Ct. at 1963, "they must be placed in a context that raises a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action." *Id.* at 1966.[3]

In denying defendants' motion to dismiss, this Court recounted additional fact-specific allegations:

---

[3] Citing the parties' briefs, the *Twombly* court gives as an example of what would satisfy its pleading standard the following: factual allegations of parallel conduct which included allegations of " 'complex and historically unprecedented changes in pricing structure made at the very same time by multiple competitors, and made for no other discernible reason.' " *Id.* at n.4.

7

> Plaintiffs' additional allegations about the high price of natural gas on the futures market, the supply of natural gas for the United States after Hurricanes Rita and Katrina in the fall of 2005, and the staggering profits reported by the defendants further create an inference that the defendants conspired to fix the price of natural gas. First, the facts alleged concerning the high price of natural gas could support an inference that defendants conspired to raise prices to reap the enormous benefits described by plaintiffs. Second, facts alleged about the amount of proved reserves and the total usage of natural gas could support an inference that defendants falsified their statement about the shortage of natural gas to increase their profits.

*Moundridge*, 471 F. Supp. at 41. These are anything but the conclusory allegations that the Supreme Court declared inadequate in *Twombly*, and further demonstrate that there is simply no need to revisit this Court's decision on defendants' motions to dismiss the Sherman Act § 1 claim.

## II. PLAINTIFFS' PROPOSED AMENDMENT TO THEIR SECOND SUPPLEMENTAL COMPLAINT MEETS THE REQUIREMENTS OF FED.R.CIV.P. 15 AND THE CONTROLLING CASE LAW.

Given that the pleading standards of *Twombly* have been satisfied by the allegations in the Second Supplemental Complaint, which has already been accepted by the Court, defendants' argument that plaintiffs' proposed amendment preserving these allegations should be denied as "futile" simply melts away. Nor do defendants' remaining arguments for denying plaintiffs leave to amend hold up under scrutiny.

Defendants improperly contend that plaintiffs have had four "bites at the apple," including the original complaint, to plead their antitrust claims, and should not be given another chance. To be precise, plaintiffs have filed one amended complaint, seek leave to file a second amended complaint,[4] and have filed two *supplemental* complaints. As Rule 15(d) makes clear, a supplemental complaint serves a different purpose from that achieved by an amended complaint: the former is limited to a description of

---

[4] The first amended complaint substituted Coral Energy Resources for the parent entity originally named, based on Coral's representation to plaintiffs that it controlled all of Shell's U.S. natural gas supplies at the wellhead. Coral's subsequent claim to the Court that it was a marketer subject to jurisdiction of the FERC is the basis for the second amendment filed May 24, 2007 (pursuant to the Court's Scheduling Order), substituting Shell Oil Company for Coral.

8

"transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented." As will be seen, plaintiffs' two supplemental complaints were properly so limited.

In any event, defendants were wholly responsible for the first amendment and at least partially responsible for the first and second supplemental complaints as well as the proposed second amendment. In making the first amendment pursuant to a motion *consented to by defendants*, filed early in the litigation (Dkt. No. 17, Aug. 30, 2004), plaintiffs relied on the representation of counsel for corporate members of the Royal Dutch Shell Group that defendant Coral Energy Resources, L.P. was responsible for all of the Royal Dutch Shell Group's natural gas operations in the United States, including the production and pricing of gas at the wellhead, and should therefore be substituted for its parent as a defendant in the case. The only other change effected by the first amendment was the substitution of BP America, Inc. for defendant BP, P.L.C., after communications with BP's counsel of record.

Plaintiffs sought leave to file their First Supplemental Complaint because defendants had moved the Court (Dkt. No. 42, Dec. 29, 2005) to decide their pending motion to dismiss before ruling on plaintiffs' preliminary injunction motion. In the interest of justice, plaintiffs felt that it was important for the Court to have before it allegations of defendants' actions in the relevant market subsequent to their collaboration in the 2003 NPC Report, including their withholding of supply and raising prices on mere pretext based on the purportedly significant loss of natural gas due to Hurricanes Katrina and Rita. In plaintiffs' view, these allegations rebutted defendants' contention that plaintiffs' entire case should be dismissed on the basis of the *Noerr-Pennington* doctrine, because the newly alleged conduct occurred in the market and not in connection with NPC activities. *See* Plaintiffs' Memorandum in Support of Their Motion for Leave to File and Serve Their First Supplemental Complaint (Dkt. No. 43, Jan. 4, 2006), at 2.

9

Similarly, plaintiffs moved for leave to file their Second Supplemental Complaint in response to the position taken by the defendants in the Parties' Joint Report on Scheduling Conference and Discovery Plan (Dkt. No. 67, Aug. 24, 2006) ("First Joint Report"). There defendants stated that the Court should decide defendants' motions to dismiss before allowing plaintiffs any discovery, it being the defendants' belief (once again) that the entire case could be dismissed based on *Noerr-Pennington*. 1st Jt. Rep. at 6. The Second Supplemental Complaint provided further factual allegations relating to the period up to August 31, 2006, stating that the price of wellhead gas was steadily increasing, that the wellhead price for the first eight months of 2006 substantially exceeded the price of natural gas for the same period in 2005, that the consumption of natural gas had remained flat, that proved reserves were increasing and that working gas in storage exceeded that for 2005. Because these occurrences were caused by conduct of the defendants in the market—outside the walls of the NPC—*Noerr-Pennington* could not be a bar to the lawsuit. *See* Plaintiffs' Statement of Points and Authorities in Support of Their Motion for Leave to File and Serve Their Second Supplemental Complaint (Dkt. No. 69, Sept. 28, 2006).

The proposed amendment to the Second Supplemental Complaint, filed May 24, 2007, is both timely and proper. The motion for leave to file the amendment was authorized by the Court, whose scheduling order called for motions to amend the complaint and for joinder of parties to be made on or before May 24, 2007, the date on which plaintiffs' motion was filed. Pleadings may be amended for the purpose of adding parties. *See Wiggins v. Dist. Cablevision, Inc.*, 853 F. Supp. 484, 499 (D.D.C. 1994).

In short, contrary to what defendants contend, these amendments and supplementations do not "merely restate[] the same facts as the original complaint in different terms, reassert[] a claim on which the court previously ruled, [or] fail to state a legal theory…or [to] withstand a motion to dismiss," as was the case in *Bancoult v.*

*McNamara,* 214 F.R.D. 5, 8 (D.D.C. 2003), a case cited by the defendants and readily distinguishable for the reasons explained above. Defs. Motion at 10-11.

Nor was there undue delay in filing the motion for leave to amend, as defendants contend. Defs. Motion at 11. Plaintiffs did not know until the Court ruled on January 9 of this year that their antitrust claims against Coral Energy Resources, L.P. would be barred by the filed rate doctrine. *Moundridge*, 471 F. Supp. 2d at 45, 46. Therefore, if plaintiffs wanted to keep a Shell affiliate in the case, they needed to find an affiliate which was involved in wellhead production and over which personal jurisdiction could be asserted in the District of Columbia. These determinations required research of publicly available information. By the time that research was completed, the Court had issued its scheduling order. Since the Court set a specific date of May 24, 2007 for any motions to add parties, to which defendants did not object, the plaintiffs, for the sake of efficiency, elected to move only once for leave to file an amendment that would include both the new plaintiffs and the new defendant. The proposed amendment does not include any new factual allegations except those relating to the grounds for the Court's personal jurisdiction over Shell Oil Company.

*Boyd v. District of Columbia*, 465 F. Supp. 2d 1 (D.D.C. 2006) is particularly instructive given that the procedural facts there parallel those in the instant case. There, as here, the defendants opposed plaintiff's motion to amend the complaint on the grounds that it was untimely and if granted would cause undue prejudice. In granting the motion to amend, the court first noted "Rule 15's mandate that leave is to be 'freely given when justice so requires,'" citing *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996). *See also Caribbean Broad. Sys., Ltd. v. Cable & Wireless P.L.C.*, 148 F.3d 1080, 1083 (D.C. Cir. 1998). The court found that the motion was timely because the plaintiff filed it approximately three months after discovery alerted him of a new cause of action against the defendants. In the instant case, the plaintiffs filed their motion three months after the

Court's Scheduling Order expressly allowing new parties to be added.[5] The court in *Boyd* emphasized that "timeliness is 'relevant only insofar as it suggests either bad faith on the part of the moving party or potential prejudice to the non-moving party should an amendment be allowed,'" *Boyd*, 465 F. Supp. 2d at 4 (citing *Caribbean Broad. Sys., Ltd.*, *supra*, 148 F.3d at 1084).  Because the motion was filed approximately four months before the close of discovery, and defendants accordingly "had ample time to seek the extra discovery they may need to address" the new claim, the court concluded that allowing the amendment would not cause undue prejudice.  *Boyd*, 465 F. Supp. 2d at 4.  By comparison, in the instant case the motion for leave to amend was filed approximately six months before the close of fact discovery.  Accordingly, *Boyd* should control here and plaintiffs' motions should be considered timely and not unduly prejudicial.

**III.     CONTROLLING LAW AND THE INTERESTS OF JUSTICE AND FAIRNESS MANDATE THAT PARTIAL, LIMITED EVIDENCE OBTAINED FROM DISCOVERY SHOULD BE STRICKEN OR OTHERWISE DISREGARDED BY THE COURT IN RULING ON DEFENDANTS' MOTION TO RECONSIDER.**

Defendants have the temerity to support their Motion with facts obtained from discovery when they, defendants, have not produced one piece of paper in response to plaintiffs' first set of requests for the production of documents, which was served on April 10, 2007 and has been pending for two and one-half months.  In contrast, plaintiffs, acting in good faith, have timely answered defendants' first set of interrogatories and defendants' first set of requests for the production of documents, and have thus far produced for depositions the Rule 30(b)(6) designees for 7 of the 18 plaintiff-cities.[6] Even though plaintiffs objected to defendants' interrogatories, document requests and deposition notices as premature because they were served prior to the due date for the

---

[5] The court in Boyd considered the scheduling order deadline as a benchmark of timeliness.  *See Boyd*, 465 F. Supp. 2d at 3-4.

[6] Depositions of the remainder of plaintiffs' Rule 30(b)(6) designees, with the exception of the designee for the City of Greensburg, Kansas, have been scheduled through August 3, 2007. Greensburg's deposition has been postponed indefinitely because the City was virtually destroyed by a tornado earlier this year.

parties' initial disclosures under Rule 26(a), plaintiffs have in good faith complied with these discovery requests, assuming—wrongly, as it has turned out—that defendants' zeal in getting discovery underway against plaintiffs would result in their producing their own documents with equal celerity.

Apart from the obvious injustice and unfairness inherent in allowing defendants to avail themselves of partial, incomplete discovery, ordered by the Court for all parties, to support their motion to reconsider and opposition to plaintiffs' motion to amend their supplemental complaint, controlling law requires the Court to limit its scrutiny to the pleadings and to ignore evidence extrinsic to those pleadings when ruling on—or reconsidering—a motion to dismiss. Fed.R.Civ.P. 12(b); *Colbert v. Potter*, 471 F.3d 158, 164 (D.C. Cir. 2006); *Zuurbier v. Midstar Health Inc.*, 306 F. Supp. 2d 1, 5 (D.D.C. 2004).

If, on consideration of a Rule 12(b)(6) motion, facts extrinsic to the pleadings are considered in ruling on a motion to dismiss, the motion must be regarded as one for summary judgment. Fed.R.Civ.P. 12(b). That would be utterly inappropriate here, however, since the Court at the scheduling hearing has already rejected defendants' request for phased discovery and has ruled that full discovery as to all parties was to continue through November 20, 2007, and for expert witnesses thereafter. In addition, the Court's Scheduling Order calls for summary judgment motions to be filed and ruled upon after the conclusion of all discovery. For all these reasons, defendants should not be permitted to rely on partial evidence obtained through discovery in support of their motion to reconsider, and, accordingly, plaintiffs' motion to strike those portions of defendants' motion that set forth such evidence should be granted, or, at a minimum, the Court should disregard such evidence.[7]

---

[7] More specifically, the portion of Defendants' Motion which should be stricken is footnote 3, insofar as it relates to plaintiffs' interrogatory responses.

13

## CONCLUSION

For all of the foregoing reasons, defendants' motion for reconsideration of the Court's order denying defendants' motion to dismiss plaintiffs' Sherman Act § 1 claim should be denied, and plaintiffs' motion for leave to amend their Second Supplemental Complaint should be granted.

Respectfully submitted,

WHEATLEY & RANQUIST, P.A.

By *[signature: Charles F. Wheatley Jr.]*
Charles F. Wheatley, Jr. #121533
John F. Woods #234310
James F. Fairman #14464
WHEATLEY & RANQUIST, P.A.
34 Defense Street
Annapolis, MD 21401
410-266-7524
301-261-8608 (Washington, DC line)
301-261-8699 (fax)
wheatlaw@aol.com

Robert C. Huntley
HUNTLEY PARK, L.L.P.
250 S. 5th Street, Suite 660
P.O. Box 2188
Boise, ID 83702
208-388-1230
208-388-0234 (fax)

*Attorneys for Plaintiffs*

June 25, 2007

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing Plaintiffs' Initial Disclosures was sent via electronic mail this 25th day of June, 2007 to the following individuals:

>Robert G. Abrams
>HOWREY LLP
>1299 Pennsylvania Avenue, N.W.
>Washington, DC 20004-2402
>abramsr@howrey.com
>
>Francis A. Vasquez, Jr.
>WHITE & CASE LLP
>701 Thirteenth Street, N.W.
>Washington, DC 20005-3807
>fvasquez@whitecase.com
>
>J. Robert Robertson
>KIRKLAND & ELLIS LLP
>200 East Randolph Drive
>Chicago, IL 60601
>rrobertson@kirkland.com

>*Charles F. Wheatley Jr.* (signature)
>Charles F. Wheatley, Jr.
>WHEATLEY & RANQUIST, P.A.
>34 Defense Street
>Annapolis, Maryland  21401
>wheatlaw@aol.com