**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

```
_____
                                )
CITY OF MOUNDRIDGE, et al.,     )
                                )
        Plaintiffs,             )
                                )
        v.                      )     Civil Action No. 04-940 (RWR)
                                )
EXXON MOBIL CORPORATION,        )
et al.,                         )
                                )
        Defendants.             )
_____)
```

**MEMORANDUM OPINION AND ORDER**

Eighteen municipalities sued Exxon Mobil Corporation, BP America, Inc., Coral Energy Resources, L.P., Chevron Corporation,[1] and ConocoPhillips Corporation for violating the antitrust laws by agreeing to artificially inflate the price of natural gas, monopolizing, attempting to monopolize, conspiring to monopolize, and engaging in price discrimination. A January 9, 2007 opinion ("January 9th opinion") dismissed the complaint as to Chevron for lack of personal jurisdiction and as to Coral for failure to state a claim since its filed rates are regulated solely by the Federal Energy Regulatory Commission. City of Moundridge v. Exxon Mobil Corp., 471 F. Supp. 2d 20, 27 (D.D.C. 2007). Plaintiffs have moved to alter or amend the judgment under Federal Rule of Civil Procedure 59(e), or for

---

[1]    Chevron Corporation was known as ChevronTexaco Corporation before its name change in May 2005.

- 2 -

leave to conduct jurisdictional discovery regarding Chevron and limited discovery concerning the sufficiency of their claim against Coral.  Because plaintiffs have not based their request upon newly available evidence, or shown that the January 9th opinion involved a clear error requiring amendment or that discovery is warranted, plaintiffs' motion will be denied.

## BACKGROUND

The history and background of this case are discussed fully in City of Moundridge, 471 F. Supp. 2d at 27-29.  Briefly, plaintiffs allege that defendants, the five major producers of natural gas in the United States, have artificially raised the prices of natural gas without having a legitimate justification for doing so.  Despite defendants' claims of a dwindling supply of natural gas, plaintiffs maintain that there is no such shortage in the United States.  Plaintiffs argue that the defendants have reaped substantial profits as a result of these artificial price increases.  The January 9th opinion followed defendants' motion to dismiss on the basis of the plaintiffs' lack of standing, failure to plead personal jurisdiction and to state a claim, and protection under the Noerr/Pennington doctrine.

## DISCUSSION

"While the court has considerable discretion in ruling on a Rule 59(e) motion, the reconsideration and amendment of a

- 3 -

previous order is an unusual measure." <u>El-Shifa Pharm. Indus. v.</u> <u>United States</u>, Civil Action No. 01-731, 2007 WL 950082, at *1 (D.D.C. Mar. 28, 2007) (internal citations omitted).  A motion to alter the judgment need not be granted unless there is an intervening change of controlling law, new evidence becomes available, or there is a need to correct a clear error or prevent manifest injustice.  <u>Messina v. Krakower</u>, 439 F.3d 755, 758 (D.C. Cir. 2006).

I.   CLAIMS AGAINST CHEVRON AND CORAL

Plaintiffs assert that the allegations in the complaint, together with affidavits containing new evidence, demonstrate "that Chevron has contacts sufficient with the District to establish a *prima facie* case for personal jurisdiction and that defendant Coral Energy's control over and exclusive access to the Royal Dutch Shell Group's *entire* production of natural gas at the wellhead in the United States removes it from any protection of the filed rate doctrine."  (Pls.' Mot. to Revise, Mem. of P. & A. ("Pls.' Mot. to Revise") at 1-2.)[2]

---

[2]    Plaintiffs also insist that "[t]he court erred by failing to consider material allegations in the complaint that more adequately demonstrate specific intent" in regards to their dismissed monopolization claims under Section 2 of the Sherman Act.  (Pls.' Mot. to Revise at 3.)  However, they fail to demonstrate through intervening law or the advent of new evidence that they are entitled to a reconsideration of this dismissal. Indeed, their motion to reconsider this ruling, similar to their request for reconsideration of the jurisdictional ruling, appears to be a broad demand for discovery rather than a request for revision based upon clear error or a change due to

- 4 -

General jurisdiction may be exercised under the District of
Columbia's long-arm statute over a corporation where its
subsidiaries are "mere 'alter egos' . . . and have sufficient
contacts with the district to permit general jurisdiction over
them . . . ." Diamond Chem. Co. v. Atofina Chems., Inc., 268 F.
Supp. 2d 1, 7 (D.D.C. 2003). To be subject to personal
jurisdiction, the corporation "must exercise 'continuing
supervision and intervention in the subsidiaries' affairs'" and
"control over the conduct that allegedly violated the antitrust
laws." United States v. Smithfield Foods, Inc., 332 F. Supp. 2d
55, 61-62 (D.D.C. 2004) (internal citations omitted).[3]

---

intervening circumstances. Because plaintiffs do not meet the
standard required under Rule 59(e), and have not demonstrated
that the January 9th opinion was manifestly unjust,
reconsideration of the dismissal of this claim is not warranted.
Similarly, plaintiffs seek discovery as to their dismissed
Robinson-Patman claim to determine if "those who purchase from
defendants and resell to plaintiffs are so under the control of
defendants that their pricing behavior can be imputed to the
defendants." (Pls.' Reply to Defs.' Opp'n ("Pls.' Reply") at
17.) However, their argument regarding the indirect purchaser
doctrine's applicability to Robinson-Patman claims was not
advanced for consideration in the first instance and a motion to
reconsider is not the proper vehicle for contentions that might
have been provided previously. Cf. Singh v. George Washington
Univ., 383 F. Supp. 2d 99, 101 (D.D.C. 2005) (noting that in the
context of a Rule 54(b) motion "[j]ustice may require revision
when the Court has patently misunderstood a party, has made a
decision outside of the adversarial issues presented to the Court
by the parties, has made an error not of reasoning but of
apprehension, or where a controlling or significant change in the
law or facts has occurred since the submission of the issue to
the Court") (internal citations and quotations omitted).

[3]      "To determine whether a parent corporation controls its
subsidiaries, the court looks to the totality of the relationship

- 5 -

Plaintiffs present two affidavits which they allege set forth new evidence.  They claim that the first affidavit, containing the statements of Mary K. Magnotti, legal assistant for plaintiffs' attorneys, and seven exhibits[4] support their assertion of personal jurisdiction over Chevron under the corporate alter-ego doctrine[5] and Section 12 of the Clayton Act.

----

between the parent and its subsidiaries.  Factors courts have considered include whether the parent has the capacity to influence the subsidiary's major business decisions, whether the parent and subsidiary have the same officers and directors, whether the parent and subsidiary maintain separate books and accounts, whether an integrated sales system exists between the parent and subsidiary, and whether the parent and subsidiary present a common marketing image." Smithfield Foods, 332 F. Supp. 2d at 61-62 (internal citation omitted).

[4]    These exhibits include copies of 1) a District of Columbia government website listing active Chevron "corporations, subsidiaries, and/or affiliates" (Pls.' Mot. to Revise, Magnotti Aff. ¶ 3, Ex. 1); 2) applications and certificates of authority for Chevron U.S.A., Inc. ("CUSA"), a separately incorporated Chevron subsidiary, to transact business in the District of Columbia; 3) Washington, D.C. telephone book listings bearing the name Chevron; 4) an internet listing of an office address and telephone number for Chevron Corporation in Washington, D.C.; 5) excerpts from Coral Energy's website; 6) an article about a Chevron executive appointment showing a chart of company officers; and 7) part of a CUSA Form 10-Q filing with the U.S. Securities and Exchange Commission.

[5]    In their motion for reconsideration, plaintiffs assert that long-arm jurisdiction exists under either a "conspiracy" or a "alter-ego" theory.  However, they provide no new evidence or law requiring reconsideration of their conspiracy jurisdiction claim.  Instead, they argue that the January 9th opinion held plaintiff to a stricter pleading standard than necessary to allege conspiracy.  Plaintiffs have not demonstrated that the January 9th opinion erroneously determined that they did not allege a conspiracy for jurisdictional purposes.  Accordingly, reconsideration of the dismissal of plaintiffs' conspiracy claim is not warranted.

- 6 -

(Pls.' Mot. to Revise at 7-16.)   They argue that the Chevron
subsidiary, Chevron U.S.A., Inc. ("CUSA"), is the agent or alter
ego of Chevron and that it operates in this district.   CUSA's
Securities and Exchange Commission filing states that CUSA "is a
major subsidiary of Chevron Corporation" and that "CUSA and its
subsidiaries manage and operate most of Chevron's U.S. business."
(Id. at 8; Magnotti Aff. ¶ 9, Ex. 7.)   Plaintiffs note that CUSA
maintains an office in the District of Columbia, where a Vice
President, who reports to a Chevron official, is stationed.   They
further contend that this "office and certain of its personnel
were used in connection with the [antitrust] activities of
ChevronTexaco Corporation and its agreement with the other
defendants to fix natural gas prices."   (Pls.' Mot. to Revise at
9.)   Finally, plaintiffs maintain that 1) CUSA is qualified to do
business in the District; 2) CUSA is required to have a
registered agent to accept service of process; 3) "[a]t least
nine service stations are operated under Chevron's name in the
District"; and 4) "nine other subsidiaries of Chevron are
currently doing business in the District, and . . . are required
to have registered agents for service of process."   (Id. at 9.)
Plaintiffs conclude that this new evidence shows that Chevron has
a substantial presence in the District and "engages in 'local'
activity."   (Id. at 12.)

- 7 -

The information contained in the exhibits attached to Magnotti's affidavit is not previously unavailable new evidence. See Smith v. Hope Vill., Inc., Civil Action 05-633 (RBW), 2007 WL 1086572, at *7 (D.D.C. Apr. 12, 2007) (noting that a Rule 59(e) motion to reconsider is not "a vehicle for presenting theories or arguments that could have been advanced earlier" (internal citations omitted)).  Plaintiffs do not suggest that this evidence was not at their disposal when they initially opposed Chevron's motion to dismiss.  See Fox v. Am. Airlines, Inc., 389 F.3d 1291, 1296 (D.C. Cir. 2004) (finding no abuse of discretion where district court refused to vacate its judgment because plaintiff failed to provide a previously available argument) (citing Kattan v. Dist. of Columbia, 995 F.2d 274, 276 (D.C. Cir. 1993 ("Ordinarily Rule 59 motions . . . are not granted by the District Court where they are used by a losing party to request the trial judge to reopen proceedings in order to consider a new defensive theory which could have been raised during the original proceedings.")); Oceana, Inc. v. Evans, 389 F. Supp. 2d 4, 8 (D.D.C. 2005) (precluding a plaintiff seeking to persuade a court to amend its judgment from "rely[ing] on arguments that could have been made at an earlier stage in the proceeding, . . . for Rule 59 was not intended to allow a second bite at the apple").[6]

---

[6]    In any event, the information in Magnotti's affidavit does not necessarily establish personal jurisdiction over Chevron.  First, the exhibits do not show that Chevron "'so

- 8 -

The plaintiffs' second affidavit is that of George L. Donkin, "a consulting economist specializing in energy economics and public policy toward business." (Pls.' Mot. to Revise, Donkin Aff. at 1.) Donkin argues that the filed rate doctrine does not apply to plaintiffs' claims against Coral because the prices at issue are not subject to FERC jurisdiction. Here, too, plaintiffs do not provide any information that could not have been submitted previously. Instead, the affidavit re-hashes arguments that were addressed in the January 9th opinion regarding whether FERC jurisdiction should apply, namely that

---

dominated [CUSA] as to negate its separate personality,' making the exercise of jurisdiction over the absent parent fair and equitable." Atlantigas Corp. v. Nisource, Inc., 290 F. Supp. 2d 34, 48 (D.D.C. 2003) (citation omitted) (finding that the alter-ego doctrine did not apply where the allegations were "limited to descriptions of [the affiliate's] status . . . and to a list of the names of . . . officers at the time of the scheme" and where "[t]he pleading [was] devoid . . . of any allegations tending to demonstrate that any of the . . . Defendants dominated [the affiliate] to the extent required by law in order to extend [the affiliate's] contacts to any other defendant"). Second, while plaintiffs focus on a supervisory relationship between a Chevron officer and a CUSA officer, "it is entirely appropriate for directors of a parent corporation to serve as directors of its subsidiary, and that fact alone may not serve to expose the parent corporation to liability for its subsidiary's acts." United States v. Bestfoods, 524 U.S. 51, 69 (1998). Although plaintiffs consistently claim that they are entitled to jurisdictional discovery to support their claims (Pls.' Mot. to Revise at 16), they do not demonstrate that "adherence to the fiction of the separate existence of the corporation would sanction fraud or promote injustice." Diamond Chem. Co., 268 F. Supp. 2d at 9.

- 9 -

Coral's sales are made pursuant to blanket marketing certificates issued by FERC.[7]

Plaintiffs have presented no newly available evidence, and have shown no clear error or a manifestly unjust result.  Because plaintiffs have not satisfied the requirements of Rule 59(e), their motion to alter the January 9th opinion regarding lack of jurisdiction over Chevron and the complaint's failure to state a claim against Coral will be denied.

_____

[7]    Plaintiffs allege the following syllogism: Royal Dutch Shell Group ("Shell") engages in sales at the wellhead, or first sales, which are not subject to FERC jurisdiction; Coral is the exclusive marketer for all of Shell's natural gas production in the United States (citing to a previous filing submitted in conjunction with their motion for a preliminary injunction in which they maintained that Coral controls the disposition of Shell's gas at the wellhead); therefore "Coral controls, or at least influences, the pricing of [Shell's] gas at the wellhead." (Pls.' Mot. to Revise at 17.)  The filing that plaintiffs refer to was submitted approximately fourteen months after Coral filed its motion to dismiss and plaintiffs did not allege in their opposition to Coral's motion any relationship between Coral and Shell that might establish this court's jurisdiction over Coral. Their decision not to provide any information about that relationship in reference to Coral's motion or request at that time additional discovery relating to their theory does not require any amendment of the judgment.  Moreover, plaintiffs have presented no evidence in their motion for reconsideration that Coral's marketing of Shell's gas production demonstrates that Coral is involved in first sales.  Simply citing to Coral's website in which it states that "[t]hrough Shell, Coral has access to some of North America's largest gas reserves" (Pls.' Mot. to Revise, Magnotti Aff., Ex. 5), does not establish that Coral is not a secondary seller that falls outside of FERC jurisdiction.

- 10 -

II.  DISCOVERY

Plaintiffs seek leave to conduct jurisdictional discovery in order to establish personal jurisdiction over Chevron.  (Pls.' Mot. to Revise at 1, 14.)  "To get discovery, however, one must ask for it" at an appropriate stage in the course of litigation. Second Amendment Found. v. U.S. Conf. of Mayors, 274 F.3d 521, 525 (D.C. Cir. 2001) (finding no error where district court dismissed suit before plaintiff had an opportunity to engage in jurisdictional discovery when plaintiff "neither moved for an opportunity to serve jurisdictional discovery nor defended against the [defendant's] motion to dismiss on the ground that it had not yet taken such discovery"); see Platten v. HG Berm. Exempted Ltd., 437 F.3d 118, 139 (1st Cir. 2006) ("If a party needs jurisdictional discovery, that party has an obligation to request it in a timely manner."); cf. Lacey v. Wing, No. 03-7186, 2004 WL 2616289, at *1 (D.C. Cir. Nov. 17, 2004) ("[A]ppellants cannot avoid summary affirmance by arguing their need to engage in jurisdictional discovery where they did not request such discovery below.").  "A district court has broad discretion in its resolution of discovery problems that arise in cases pending before it."  In re Multi-Piece Rim Prods. Liab. Litig., 653 F.2d 671, 679 (D.C. Cir. 1981); Mwani v. bin Ladin, 417 F.3d 1, 17 (D.C. Cir. 2005) ("[T]he scope of discovery lies within the district court's discretion.").

- 11 -

Here, plaintiffs neither independently sought jurisdictional

discovery, nor requested it in response to defendants' motion to

dismiss.[8]  Only now, after an adverse decision, have plaintiffs

asserted a need for jurisdictional discovery.  This alone is

reason to deny the request for jurisdictional discovery.  See

Platten, 437 F.3d at 140 (affirming rejection of discovery

request where "[p]laintiffs had ample opportunity to request

jurisdictional discovery in the full year [before] the district

---

[8]  Plaintiffs' opposition to defendants' motions to dismiss neither implicitly nor explicitly requested jurisdictional discovery.  Plaintiffs assert that in the parties' joint case management report filed pursuant to Local Civil Rule 16.3, plaintiffs requested discovery on numerous jurisdictional issues including the scope of Noerr/Pennington immunity and Coral's protection from suit under the filed rate doctrine (Pls.' Mot. to Revise at 15), and that the court's choice to rule on the motions to dismiss precluded taking any discovery.  Plaintiffs' contention is unpersuasive.  The joint report was not filed along with any of the documents relating to defendants' motions to dismiss.  Indeed, plaintiffs' comments in the joint report were not filed until more than a year and a half after plaintiffs filed their opposition.  Additionally, plaintiffs never even asserted in the joint report that jurisdictional discovery as to Chevron was needed; at most, they suggested additional discovery regarding Coral's invocation of the filed rate doctrine.  (Joint Report at 8.)  Plaintiffs' broadly worded statements in the joint report about the need for discovery in no way signaled that they were requests for jurisdictional discovery made in response to defendants' motions to dismiss, particularly in light of plaintiffs' arguments that the jurisdictional defenses provided by defendants "present factual issues that are more appropriately dealt with on a motion for summary judgment."  (Id. at 3.)  Plaintiffs have not established that their joint report should be treated as a request for jurisdictional discovery made prior to the dismissal of their claims.  See Naartex Consulting Corp. v. Watt, 722 F.2d 779, 788 (D.C. Cir. 1983).  They had ample opportunity to seek it before the dismissal, and their request now is belated.

- 12 -

court ruled on the . . . motion to dismiss for lack of personal
jurisdiction.  Yet, plaintiffs made no attempt to do so until
after the district court ruled in defendants' favor"); <u>Barrett v.
Lombardi</u>, 239 F.3d 23, 29 (1st Cir. 2001) (finding request
"plainly too late" where party "did not seek additional discovery
at any time prior to the entry of an adverse judgment").

Moreover, a plaintiff seeking jurisdictional discovery
should "make a 'detailed showing of what discovery it wishes to
conduct or what results it thinks such discovery would produce.'"
<u>Atlantigas</u>, 290 F. Supp. 2d at 53 (quoting <u>United States v.
Phillip Morris Inc.</u>, 116 F. Supp. 2d 116, 130 n.16 (D.D.C. 2000))
(further stating that "[p]laintiff's request to supplement its
jurisdictional allegations through discovery is not merely
ambiguous, it is conclusory and vague, and therefore
insufficient").  Plaintiffs supply the Magnotti and Donkin
affidavits, and state that they "have brought to the attention of
the Court enough facts to suggest that such discovery is
justified."  (Pls.' Mot. to Revise at 15.)

That is hardly a detailed showing of what jurisdictional
discovery they want to conduct or how additional discovery will
establish this court's jurisdiction over Chevron.  Lists of
Chevron subsidiaries and officers, a list of Chevron gas stations
in this district, a Washington, D.C. office address for Chevron,
and licenses for CUSA to do business in D.C. are not adequate to

- 13 -

identify the discovery sought or to demonstrate that jurisdiction
likely exists over Chevron rather than CUSA.[9]  Although CUSA is a
"major subsidiary of Chevron Corporation" (Magnotti Aff., Ex. 7),
plaintiffs do not dispute, and indeed their exhibits do not
refute, that CUSA and Chevron are separate legal entities.
"Generally when the subsidiary maintains a separate legal entity,
its presence in the district will not be sufficient to [establish
jurisdiction] over the foreign parent corporation." Caribe
Trailer Sys., Inc. v. P.R. Mar. Shipping Auth., 475 F. Supp. 711,
717 (D.D.C. 1979).  With no showing of how their exhibits reveal
that the separateness of CUSA and Chevron is merely a fiction,
plaintiffs' generalized request for jurisdictional discovery to
establish personal jurisdiction over Chevron is insufficient.
Atlantigas, 290 F. Supp. 2d at 53.[10]  Because plaintiffs' motion

---

[9]      See n.6, supra.

[10]     Plaintiffs also claim "justice requires" discovery
relating to Coral so that plaintiffs may "determine whether Coral
or some other Shell affiliate is responsible for setting wellhead
prices and controlling wellhead production." (Pls.' Mot. to
Revise at 18.)  Additionally, they assert that they should be
allowed to conduct discovery to address the flaws in their
Robinson-Patman Act § 2 claims. (Id. at 23.)  As was stated
previously, see n.7, supra, they could have explicitly requested
discovery regarding Coral's relationship with Shell prior to this
court's unfavorable disposition of their claims.  Plaintiffs were
aware of the fact that Coral is the exclusive marketer of all of
Shell's natural gas production (see Pls.' Mot. to Revise at 17
(referring to a Notice filed on January 20, 2006)), and could
have filed a request to stay a ruling on the motion until they
could conduct discovery. El-Fadl v. Cent. Bank of Jordan, 75
F.3d 668, 675 (D.C. Cir. 1996).  As it stands, plaintiffs'
request coming as it does after dismissal of their claims seeks

- 14 -

for jurisdictional discovery is untimely and improperly pled, and because their motion to alter or amend the judgment will be denied, their motion for leave to conduct jurisdictional discovery regarding Chevron and limited discovery regarding Coral will be denied.

<u>CONCLUSION AND ORDER</u>

Plaintiffs have not demonstrated that the January 9th opinion involved a clear error of law or was manifestly unjust. They have provided no new evidence or intervening law requiring reconsideration of their claims.  Additionally, their request for jurisdictional discovery is untimely and improperly pled. Accordingly, it is hereby

ORDERED that plaintiffs' motion [78] to revise, or in the alternative, to alter or amend judgment, be and hereby is, DENIED.

SIGNED this 26th day of July, 2007.


                                    _____/s/_____
                                    RICHARD W. ROBERTS
                                    United States District Judge

_____

too much too late.