UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                )
CITY OF MOUNDRIDGE, <u>et al.</u>,   )
                                )
        Plaintiffs,             )
                                )
        v.                      )   Civil Action No. 04-940 (RWR)
                                )
EXXON MOBIL CORP. <u>et al.</u>,     )
                                )
        Defendants.             )
_____)

<u>MEMORANDUM OPINION</u>

Eighteen municipalities[1] sued Exxon Mobil Corporation, BP
America, Inc., and ConocoPhillips Corporation for violating
federal antitrust laws by agreeing to fix prices.  The plaintiffs
have moved for leave to amend the second supplemental complaint
to add Shell Oil Company ("Shell") as a defendant, to add five
municipalities as plaintiffs,[2] to clarify their allegation
regarding the defendants' control of natural gas production, and
to delete unnecessary allegations.  In response, the defendants
moved for reconsideration of the January 9, 2007 Order which
denied their motion to dismiss the price fixing conspiracy claim

_____

[1] The plaintiffs are the cities of Moundridge, Kansas;
Winfield, Kansas; Coffeyville, Kansas; Denison, Kansas; Garnett,
Kansas; Greensburg, Kansas; Halstead, Kansas; Humboldt, Kansas;
Iola, Kansas; La Cygne, Kansas; Macon, Missouri; Minneapolis,
Kansas; Osage City, Kansas; Rensselaer, Indiana; Sabinal, Texas;
Shelbina, Missouri; and Wellington, Kansas, and the Village of
Stonington, Illinois.

[2] The additional plaintiffs would be the following five
cities in Kansas: Chanute, Kechi, Larned, Lyons, and Spearville.

in Count One, and opposed the plaintiffs' motion arguing that the
amendment is futile after <u>Bell Atlantic Corp. v. Twombly</u>, 127 S.
Ct. 1955 (2007), and claiming undue prejudice and delay.  Because
the second supplemental complaint sufficiently pled a cause of
action, the defendants' motion for reconsideration has been
denied.  Because filing an amended conspiracy complaint would not
be futile, or cause undue prejudice or undue delay, but the
proposed amended complaint realleges without authorization
dismissed counts, the plaintiffs' motion for leave to amend has
been denied without prejudice.

BACKGROUND

The background of this case is fully discussed in <u>City of
Moundridge v. Exxon Mobil Corp.</u>, 471 F. Supp. 2d 20, 27-29
(D.D.C. 2007).  Briefly, the plaintiffs alleged that the
defendants, producers of natural gas used in the United States,
agreed to artificially raise natural gas prices and committed
other antitrust violations.  <u>Id.</u>; <u>City of Moundridge v. Exxon
Mobil Corp.</u>, 244 F.R.D. 10, 11 (D.D.C. 2007).  Despite the
defendants' claims of a dwindling natural gas supply, plaintiffs
maintain that no natural gas shortage exists and that the
defendants have reaped substantial profits due to their
artificial price increases.  <u>City of Moundridge</u>, 244 F.R.D. at
11.  On January 9, 2007, Coral Energy Resources, L.P.'s
("Coral's") motion to dismiss was granted and all claims against

- 3 -

Exxon Mobil Corporation, BP America, Inc., and ConocoPhillips were dismissed except for the conspiracy claim in Count One. City of Moundridge, 471 F. Supp. 2d at 46.

Before the scheduling order's deadline of May 24, 2007, the plaintiffs moved for leave to amend the second supplemental complaint to add Shell as a defendant, to add five municipalities as plaintiffs, to clarify their allegation regarding the defendants' control of natural gas production, and to delete unnecessary allegations. (Pls.' Stmt. of P. & A. in Support of Mot. for Leave to Am. ("Pls.' Br.") at 1-2.) The plaintiffs moved to add Shell in response to Coral's dismissal, and asserted that the five new cities are similarly situated and raise common legal or factual questions. (Id. at 3.) The plaintiffs allege that like the other defendants, Shell both explores for and produces natural gas. (Pls.' Mot. for Leave to Am. Second Supplemental Compl. ("Pls.' Mot.") at 2.) At the time the plaintiffs moved to amend, fact discovery was in progress and did not close until December 14, 2007. Expert discovery had not started because the parties have been engaged in mediation which just concluded. The defendants moved for reconsideration of the January 9, 2007 order after Twombly was decided arguing that under Twombly, the complaint fails to sufficiently allege an agreement among the defendants. (Defs.' Mot. for Reconsideration & Opp'n to Pls.' Mot. for Leave to Amend ("Defs.' Opp'n") at 9.)

- 4 -

The defendants also oppose leave to amend because it would be futile and prejudicial, and would cause undue delay.  (<u>Id.</u> at 10-12.)

DISCUSSION

I.   RECONSIDERATION DUE TO <u>TWOMBLY</u>

Under Rule 54(b) of the Federal Rules of Civil Procedure, "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."  Fed. R. Civ. P. 54(b). Rule 54(b) permits reconsideration of an order that does not constitute a final judgment, or is interlocutory, "as justice requires."  <u>Cobell v. Norton</u>, 224 F.R.D. 266, 272-73 (D.D.C. 2004) (stating that the court has broad discretion when considering a motion for reconsideration); <u>Campbell v. U.S. Dep't of Justice</u>, 231 F. Supp. 2d 1, 7 (D.D.C. 2002).  The "as justice requires" standard requires "'determining, within the Court's discretion, whether reconsideration is necessary under the relevant circumstances.'"  <u>In Def. of Animals v. Nat'l Insts. of Health</u>, 527 F. Supp. 2d 23, 28 (D.D.C. 2007) (quoting <u>Cobell v. Norton</u>, 355 F. Supp. 2d 531, 539 (D.D.C. 2005)).  The discretion is "subject to the caveat that where litigants have once battled

for the court's decision, they should neither be required, nor
without good reason permitted, to battle for it again." Singh v.
George Washington Univ., 383 F. Supp. 2d 99, 101 (D.D.C. 2005)
(internal quotation marks omitted) (quoting In re Ski Train Fire
in Kaprun, Austria, on Nov. 11, 2004, 224 F.R.D. 543, 546
(S.D.N.Y. 2004)).  Reconsideration may be warranted if there was
a patent misunderstanding of parties, a decision made beyond the
issues presented, a failure to consider controlling law, or a
significant change in the law. Singh, 383 F. Supp. 2d at 101.
The moving party has the burden of showing that some harm or
injustice would result if reconsideration is denied.  In Def. of
Animals, 527 F. Supp. 2d at 29.

The defendants imply that Twombly changed the Rule 8
pleading standard for claims under § 1 of the Sherman Act,
rendering plaintiffs' amended complaint insufficient.  (Defs.'
Opp'n at 7-8.)  However, Twombly did not purport to require a
"heightened fact pleading of specifics[.]"  127 S. Ct. at 1974.
See also Hyland v. HomeServices of Am., Inc., No. 05-612, 2007 WL
2407233, at *3 (W.D. Ky. Aug. 17, 2007) (stating that Twombly's
pleading standard looked to "*what* information has been provided
by a plaintiff, not the *amount*").  What Twombly certainly did do
is jettison the "no set of facts" formulation found in Conley v.
Gibson, 355 U.S. 41, 45-46 (1957) ("[A] complaint should not be
dismissed for failure to state a claim unless it appears beyond

- 6 -

doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."). <u>Twombly</u> requires "a complaint with enough factual matter (taken as true) to suggest that an agreement was made." 127 S. Ct. at 1965. The requirement of plausible grounds to "infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [an] illegal agreement." <u>Id.</u> A complaint is sufficient even if actual proof is "improbable" and "'recovery is very remote and unlikely.'" <u>Id.</u> <u>Twombly</u> stated that the allegations "must be placed in a context that raises a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action." <u>Id.</u> at 1966. The Court found this standard to be consistent with Rule 8's threshold pleading requirements. The conduct alleged needs "some setting suggesting . . . agreement[,]" or otherwise put, some "further circumstance pointing toward a meeting of the minds" that "nudge[s] [the claim] across the line from conceivable to plausible[.]" <u>Id.</u> at 1966, 1974.

The defendants argue that the complaint does not provide factual allegations to suggest an actual agreement among the defendants. (Defs.' Opp'n at 9.) In <u>Twombly</u>, the plaintiffs attempted to show an agreement based on parallel conduct expressed by the absence of competition or resistance to enter

- 7 -

other territories, but did not show a basis for how or why the
defendants may have conspired.  Twombly, 127 S. Ct. at 1970-72.
See also Aktieselskabet AF 21. Nov. 2001 v. Fame Jeans, Inc., 511
F. Supp. 2d 1, 17 (D.D.C. 2007) (stating that the Twombly
plaintiffs did not present any facts to "compel an inference as
to the *motive* for [anticompetitive] conduct").

     Unlike in Twombly, the plaintiffs here do not rely on only
bare allegations of parallel behavior, or assume that there is a
conspiracy because there is an "'absence of any meaningful
competition.'"  See Twombly, 127 S. Ct. at 1970.  The complaint
alleges facts providing circumstantial evidence of a price fixing
agreement.  It alleges that the natural gas total resource base
had not decreased, that the prices had risen and never fallen
below an agreed-upon price, that the defendants had reported high
profits, City of Moundridge, 471 F. Supp. 2d at 40-41, and that
Hurricanes Katrina and Rita should not have affected the market
as the defendants claimed and they were only a pretextual reason
to justify withholding market supply to create an artificial
shortage.  (Second Supplemental Compl. ¶¶ 36, 37.)  It also
identifies the years and locations where the agreement was
reached and the defendants who participated.  (Second
Supplemental Compl. ¶¶ 15, 17, 18.)  These facts support an
inference that the "defendants conspired to raise prices to reap
the enormous benefits described by plaintiffs" and that the

- 8 -

"defendants falsified their statement about the shortage of
natural gas to increase their profits." City of Moundridge, 471
F. Supp. 2d at 41.

The defendants also argue that "there are no facts alleged
suggesting that higher natural gas prices were the result of an
agreement amongst Defendants as opposed to each Defendant's
independent business decision[,]" because "it is always in a
company's independent self-interest . . . to increase its
profits." (Defs.' Reply Br. in Support of Mot. for
Reconsideration & Opp'n to Pls.' Mot. for Leave ("Defs.' Reply
Br.") at 5, 7.) The Twombly district court examined whether the
plaintiff had adequately pled the "plus factors," which involved
economic interests and motives, believing that the plaintiffs
must "allege additional facts that 'ten[d] to exclude independent
self-interested conduct as an explanation for defendants'
parallel behavior.'" Twombly, 127 S. Ct. at 1963. The Supreme
Court stated that the sufficiency of Twombly's complaint
"turn[ed] on the suggestions raised by this [parallel] conduct
when viewed in light of common economic experience[,]" id. at
1971, but did not explicitly require that plaintiffs prove the
plus factors at the pleading stage. The Supreme Court stated
that heightened pleading was not required, id. at 1973 n.14, and
differentiated between the summary judgment and motion to dismiss
standards, noting that "a § 1 plaintiff's offer of conspiracy

evidence must tend to rule out the possibility that the
defendants were acting independently" at the summary judgment
stage.  Id. at 1964, 1973 n.14 (noting that at the pleading
stage, the concern was not with the particularity of the factual
allegations, but with whether the complaint "*in toto* . . .
render[ed] plaintiffs' entitlement to relief plausible").  See
also Iqbal v. Hasty, 490 F.3d 143, 155, 157-58 (2d Cir. 2007)
(noting the confusion over Twombly's standard and concluding that
Twombly does not require heightened pleading, but rather
implemented a "flexible 'plausibility standard,' which obliges a
pleader to amplify a claim with some factual allegations in those
contexts where such amplification is needed to render the claim
*plausible*").

Economic interests and motivations can be relevant to
evaluate plausibility, and price increases can be the result of
an independent business decision.  But, a complaint need not be
dismissed where it does not "exclude the possibility of
independent business action."  (Defs.' Reply Br. at 7.)  Such a
requirement at this stage in the litigation would be counter to
Rule 8's requirement of a short, plain statement with "enough
heft to 'sho[w] that the pleader is entitled to relief.'"
Twombly, 127 S. Ct. at 1966.[3]  To evaluate a complaint's

_____

[3] The Court positively cited its earlier decision in
Swierkiewicz v. Sorema N. A., 534 U.S. 506 (2002), noting that a
plaintiff does not have to allege "'specific facts' beyond those

- 10 -

sufficiency, <u>Twombly</u> requires allegations to be "placed in a

context that raises a suggestion of a preceding agreement, not

merely parallel conduct that could just as well be independent

action."[4]  <u>Id.</u>  The plaintiffs provided some circumstantial

---

necessary to state his claim and the grounds showing entitlement
to relief." <u>Twombly</u>, 127 S. Ct. at 1973-74.  Furthermore, while
not in the antitrust context, the Court later cited <u>Twombly</u> in
<u>Erickson v. Pardus</u>, 127 S. Ct. 2197 (2007), to emphasize the
proper pleading standard.  In <u>Erickson</u>, the Court stated that
Rule 8 "requires only a short and plain statement of the claim
showing that the pleader is entitled to relief.  Specific facts
are not necessary; the statement need only give the defendant
fair notice of what the . . . claim is and the grounds upon which
it rests." <u>Erickson</u>, 127 S. Ct. at 2200 (concluding that
allegations that prison officials stopped administering
medication, which endangered the prisoner's life, and refused to
continue treatment despite the need were not "too conclusory")
(quoting <u>Twombly</u>, 127 S. Ct. at 1964) (internal citations
omitted).

   [4] <u>See</u> <u>In re OSB Antitrust Lit.</u>, No. 06-826, 2007 WL 2253419,
at *5 (E.D. Pa. Aug. 3, 2007) (denying the motion to dismiss
because the alleged parallel conduct "may or may not be
Defendants' 'natural' reactions to the failing OSB market, but --
taken in combination with Plaintiffs' explicit allegations of
Defendants' agreement to fix prices through [published price
lists in an industry periodical], and their price-fixing
discussions during industry events -- is certainly 'enough to
raise a right to relief above the speculative level'"); <u>Hyland</u>,
2007 WL 2407233, at *3 (denying the motion to reconsider because
the allegations of government enforcement actions, admissions of
price fixing by brokers, exchange of price lists and catalogues,
and price increases despite a decline in costs support an
inference of an agreement to conspire).  <u>But see</u> <u>In re Elevator
Antitrust Lit.</u>, 502 F.3d 47, 50-51 (2d Cir. 2007) (affirming the
district court's dismissal by relying on the fact that the
complaint contained "'basically every type of conspiratorial
activity that one could imagine'" without specification and that
similar contractual language, price, and equipment design were
not "'plausible grounds to infer an agreement'" because the
conduct could be consistent with conspiracy as well as with
competitive business decisions); <u>In re Late Fee & Over-Limit Fee
Lit.</u>, No. 07-634, 2007 WL 4106353, at *7 (N.D. Cal. Nov. 16,

- 11 -

facts, including historical supply and consumption levels, market prices, profit levels, and the use the industry reports, to support an inference that the defendants engaged in not merely parallel conduct, but rather agreed to contribute false information regarding gas supply levels to industry reports, withhold supply, and engage in price-fixing.

All inferences are construed in favor of the plaintiffs and, while the claim may rest ultimately on a thin factual reed, the plaintiffs have alleged supporting circumstantial facts and placed their claims "in a context that raises a suggestion of a preceding agreement," "nudg[ing] their claims across the line from conceivable to plausible[.]"  See Twombly, 127 S. Ct. at 1966, 1974.  The defendants' motion to reconsider the denial of the motion to dismiss Count One thus has been denied.[5]

_____

2007) (dismissing complaint that failed to provide details "as to when, where, or by whom [the] alleged agreement was reached" and that "itself provide[d] an alternative [business] explanation for the increases"); In re Graphics Processing Units Antitrust Lit., No. 06-07417, 2007 WL 2875686, at *9-11 (N.D. Cal. Sept. 27, 2007) (dismissing complaint because the allegations of historically unprecedented price increases and parallel conduct by the defendants was "consistent with conspiracy[,] but . . . equally consistent with lawful conduct").

[5] This result was by no means foreordained here.  As the Second Circuit pointed out, Twombly's multiple "linguistic signals" have created "[c]onsiderable uncertainty concerning the standard for assessing the adequacy of pleadings[,]" Iqbal, 490 F.3d at 155-57, something the D.C. Circuit has not yet had occasion to address.  Guidance from our court of appeals will ultimately settle the uncertainty for this circuit, particularly surrounding how to discern what crossing the line from conceivable to plausible is.  The facts alleged here may be

- 12 -

II.  AMENDED COMPLAINT

Under Rule 15(a), after a responsive pleading has been filed, a party can amend a complaint to add a new party only with leave of the court or with written consent by the adverse parties.  <u>I.A.M. Nat'l Pension Fund v. TMR Realty Co., Inc.</u>, Civil Action No. 04-594 (CKK), 2006 WL 544012, at *3 (D.D.C. Mar. 6, 2006).  It is within a district court's discretion to decide whether to grant leave to amend.  <u>Harris v. Sec'y, U.S. Dep't of Veterans Affairs</u>, 126 F.3d 339, 344 (D.C. Cir. 1997) (stating that determining the propriety of the amendment is done on a case by case basis).  Leave should be freely given "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  <u>See also</u> <u>Atchinson v. Dist. of Columbia</u>, 73 F.3d 418, 425 (D.C. Cir. 1996).  Undue delay, undue prejudice to the defendant, or futility are factors that may warrant denying leave to amend.[6] <u>Id.</u>  The defendant has the burden of showing why leave should not be granted.  <u>LaPrade v. Abramson</u>, Civil Action No. 97-10 (RWR), 2006 WL 3469532, at *3 (D.D.C. Nov. 29, 2006).

---

barely over that line, but they make it plausible that plaintiffs could, for example, uncover a witness with personal knowledge of discussions among defendants reflecting an agreement to fix prices.  Preventing plaintiffs from trying to do so at this stage on these facts seems premature.

[6] The defendants argue that amending the complaint would be futile because the amended complaint fails to meet the <u>Twombly</u> plausibility standard.  As is discussed above, the pending claim is sufficiently pled, and nothing in the amended complaint dilutes its sufficiency.

- 13 -

To determine what is "undue delay," the parties' conduct in
the litigation and the possibility of resulting prejudice should
be considered.  Atchinson, 73 F.3d at 426 (noting that additional
discovery required due to an amendment of the complaint is a
consideration); see also Dove v. Washington Metro. Area Transit
Auth., 221 F.R.D. 246, 248 (D.D.C. 2004) (interpreting Atchinson
to state that leave to amend a complaint should not be denied
solely due to the time between the filing of the complaint and
the request to amend).  Leave may be denied if a plaintiff unduly
delayed or had "sufficient opportunity to state a claim and has
failed to do so."  Williamsburg Wax Museum, Inc. v. Historic
Figures, Inc., 810 F.2d 243, 247 (D.C. Cir. 1987) (finding that
an attempt to raise a new issue years after filing the complaint,
after discovery had been conducted, and after summary judgment
has been granted against the plaintiff was untimely).  Although
undue delay is a basis for denying leave to amend, it has been
done by this circuit only when the plaintiffs sought to add new
factual allegations.  Harrison v. Rubin, 174 F.3d 249, 253 (D.C.
Cir. 1999) (stating that technical corrections and clarification
of legal theories without a showing of prejudice are not
sufficient grounds for denying a motion).

"Undue prejudice is not mere harm to the non-movant but a
denial 'of the opportunity to present facts or evidence which []
would have [been] offered had the amendment[] been timely.'"

- 14 -

<u>Dove</u>, 221 F.R.D. at 248 (stating that examples of undue prejudice would be if the amendments altered the choice of counsel or the nature of the opposing party's strategy) (quoting <u>Foremost-McKesson, Inc. v. Islamic Republic of Iran</u>, Civil Action No. 82-220 (TAF), 1988 WL 122568, at *4 (D.D.C. Nov. 8, 1988) (noting that although an amendment will strengthen one party's case to the other side's detriment, it is not necessarily unduly prejudicial)).  <u>See also</u> <u>Atchinson</u>, 73 F.3d at 427 (D.C. Cir. 1996) (finding that the district court did not abuse its discretion by denying the motion to amend when the choice of counsel and litigation strategy were affected).  Inconvenience or additional cost to a defendant is not necessarily undue prejudice.  <u>See</u> <u>Hisler v. Gallaudet Univ.</u>, 206 F.R.D. 11, 14 (D.D.C. 2002) (stating that denying leave to amend because the amended complaint "may result in additional discovery or expense" would contradict the standard of granting leave freely when justice requires).

The defendants do not offer evidence that the amended complaint would unduly prejudice their legal strategy or their ability to present evidence.  Rather, the defendants argue that the plaintiffs had sufficient opportunities to add new parties in their prior complaint revisions and that leave to amend would further delay and prejudice defendants by requiring more

- 15 -

discovery time and a change in the scheduling order.[7]  (Defs.'
Opp'n at 11-12.)  However, plaintiffs' motion was timely filed
before the deadline to amend the complaint or join parties set in
the scheduling order.  In addition, adding Shell was a response
to Coral being dismissed.  The plaintiffs' original complaint
included Royal Dutch Shell Group as a defendant.  The plaintiffs
were allegedly led to believe by Shell's counsel that Coral
Energy was responsible for Shell's natural gas operations, and
they substituted Coral for Shell in the first amended complaint.
(Pls.' Mem. P. & A. in Opp'n to Defs.' Mot. for Reconsideration &
Reply to Defs.' Opp'n to Pls.' Mot for Leave to Am. at 9.)  Once
Coral was dismissed, the plaintiffs decided to add Shell.  Rule
15 allows amending a complaint to add a party.  Liberty Mut. Ins.
Co. v. Hurricane Logistics Co., 216 F.R.D. 14, 16 (D.D.C. 2003).

While plaintiffs have not explained their delay in adding
new plaintiffs, their first amended complaint was filed with the
defendants' consent to substitute Shell for Coral, and the

_____

[7] The defendants also assert that "[b]ecause Plaintiffs'
attempted amendment is not based on newly discovered information
or a recent event and is, instead, based on the same allegations
contained in the original Complaint, Plaintiffs' motion for leave
to amend should be denied."  (Defs.' Opp'n at 11.)  Failing to
allege new facts or offering a duplicative amendment can be
grounds for denying leave to amend.  See Wiggins v. Dist.
Cablevision, Inc., 853 F. Supp. 484, 499 (D.D.C. 1994).  However,
Rule 15 does not explicitly require that a plaintiff's amendment
add newly discovered information or be based on recent events.
See Fed. R. Civ. P. 15.

- 16 -

plaintiffs' supplements simply set forth "transaction[s],
occurrence[s], or event[s] that happened after the date of the
pleading to be supplemented."  <u>See</u> Fed. R. Civ. P. 15(d).  The
scheduling order has now been modified in any event since the
schedule had been suspended during the now-completed mediation.
It has built in a modest additional discovery period that can
accommodate new parties and several more depositions.
<u>See</u> <u>Hisler</u>, 206 F.R.D. at 14 (stating that even though discovery
had closed, it could be reopened and an "'adverse party's burden
of undertaking discovery, standing alone, does not suffice to
warrant denial of a motion to amend a pleading'" (quoting <u>United
States v. Continental Ill. Nat'l Bank & Trust Co.</u>, 889 F.2d 1248,
1255 (2d Cir. 1989))).  In light of Rule 15's preference to
freely allow leave to amend and the plaintiffs' adherence to the
scheduling order, the amendment would not unduly delay the
proceedings or prejudice the defendants.  However, since
plaintiffs' proposed amended complaint includes, without
authorization, claims that have already been dismissed,
plaintiffs' motion to amend has been denied without prejudice to
plaintiffs refiling the motion with a properly drafted amended
complaint.

<u>CONCLUSION</u>

Because the complaint alleged some circumstantial facts that
support an inference of an agreement, the plaintiffs' claim is

- 17 -

plausible and the defendants' motion [93] to reconsider the
January 9, 2007 order has been denied.  Because the defendants
have not shown that the amendment to the complaint would be
futile, or present undue prejudice or undue delay, but the
proposed amended complaint improperly alleges counts that have
already been dismissed, the plaintiffs' motion [85] for leave to
amend the complaint has been denied without prejudice.

SIGNED this 16th day of April, 2008.


_____/s/_____
RICHARD W. ROBERTS
United States District Judge